UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THOMAS SANDERS                                                    Plaintiff

v.                                               Civil Action No. 3:25-cv-343-RGJ

OFFICER DAKOTA CLEMENTS,                                        Defendants
SERGEANT BERT DE LONG, OFFICER
ANOTHONY SHEPARD, OFFICER
FLEMING, HON. CRAIG GREENBERG,
MAYOR, CHIEF OF POLICE JACQUELYN
GWINN-VILLAROEL,
LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT,

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendants Louisville/Jefferson Country Metro Government ("Metro"), Mayor Craig Greenberg ("Greenberg" or "the Mayor"), and Chief of Police Jacquelyn Gwinn-Villaroel ("Gwinn-Villaroel" or "the Chief of Police") move to dismiss the Complaint [DE 1-2] pursuant to Fed. R. Civ. P. 12(b)(6). [DE 7, DE 8, DE 13]. Plaintiff, Thomas Sanders ("Sanders") responded and filed a notice of conventional exhibit. [DE 9, DE 10, DE 18, DE 20]. Metro, Greenberg and Gwinn-Villaroel replied. [DE 11, DE 12, DE 19].[1] These motions are ripe. For the reasons below, the motions are **GRANTED**.

---

[1] The individual officer defendants ("Defendant Officers") filed an answer [DE 15] and have not moved to dismiss.

## I.    Factual and Procedural Background[2]

Originally filed in Jefferson County Circuit Court, Sanders alleges in his complaint that sometime before May 28, 2024, the Mayor ordered the Chief of Police to send Louisville Metro Police Department ("LMPD") officers to the area around 1809 Standard Avenue in Louisville, Kentucky, to clean up and remove individuals from the area so that it could be prepared for the Mayor to speak at a public event to be held later in June, July, August, or September of that year. [DE 1-2, Comp. at 16, ¶¶ 18-19].

On Tuesday, May 28, 2024, Sanders arrived at the store located at 1420 Dixie Highway in Louisville Kentucky, which is near 1809 Standard Avenue, to purchase a soda. [*Id.* at 16-17, ¶¶ 21, 28]. After purchasing the soda and as he was exiting the store, Sanders noticed many individuals on the sidewalk adjacent to Standard Avenue. [*Id.* at 17, ¶ 28]. LMPD officers "told everyone to leave the area" or be issued a citation. [*Id.*]. Defendant Officer Dakota Clements ("Officer Clements") then directed that Sanders leave the area. [*Id.*, ¶ 30]. Sanders "informed the officer that he has not committed any crimes nor any violations." [*Id.* at 18, ¶ 32]. He also "informed the officers how that woman was slammed to the ground was excessive and not warranted," and asked to speak with the officers' sergeant. [*Id.*, ¶¶ 33-34].

Defendant Sargent Bert De Long ("Sgt. De Long") spoke to Sanders, "inform[ing him] that he was loitering on the sidewalk." [*Id.*, ¶ 35]. Sanders further alleges Sgt. De Long told him, "the Mayor sent him . . . to clean up this area because one of the Mayor's associate [sic] who delivers food to the church informed him that he was not allowing his food truck deliver food to the church if the Mayor did not clean this area up." [*Id.* at 18, ¶ 36]. When Sanders refused to leave the area,

---

[2] The Court accepts facts in the operative Complaint as true for the present Motion.  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).

Officer Clements asked him for his identification. [*Id*. at 18]. Sanders alleges that, as he attempted to walk away, Officer Clements rushed him and grabbed and jerked his arm, then Defendant Officer Anthony Shepard ("Officer Shepard"), Defendant Officer Fleming ("Officer Fleming"),[3] and at least three other officers began to assault and viciously attack him on the sidewalk. [*Id*. at 18, ¶ 40]. Sanders alleges his head slammed into the concrete sidewalk and that the officers handcuffed him on the ground, and he was arrested. [Id. at 19]. Sanders alleges he sustained injuries to his head and shoulder. [*Id*. at 19]. Officer Clements and Officer Shepard began writing him a citation and Emergency Medical Services ("EMS") were called to the scene and assessed Sanders. [Id. at 19].  One of the paramedics recognized Sanders was in pain, could not move his shoulder, and that the shoulder was swelling and could not be touched without causing pain. [*Id*].

Sanders alleges that while being transported to the hospital, Officer Clements asked him whether Sgt. De Long had talked to him about letting him go and not arresting or citing him. [*Id*. at 20]. Sanders told him Sgt. De Long did not.  [*Id*.] Sgt. De Long and Officer Shepard met at the hospital, and Sgt. De Long tore up the citation by Officer Clements, then rewrote and gave it to Sanders. [*Id*.]. The new citation charged Sanders with loitering, restating arrest, menacing, and criminal mischief. [*Id*.]

After the incident, on or about June 26, 2024, approximately a month after Sanders' incident, the Mayor was a speaker at a public effect at the church at 1809 Standard Avenue.  [*Id*.] Also after the incident, on July 18, 2024, Metro or LMPD had a pole camera installed on the northbound corner of Dixie Highway and Standard Street. [*Id*.]

Sanders filed suit in the Jefferson Circuit Court alleging twelve claims for constitutional violations under 42 U.S.C. § 1983 and state-law claims. [DE 1-2].  Sanders asserts these claims:

---

[3] Officer Fleming's first name is not listed on the complaint.  The Chief of Police asserts in her motion to dismiss that there is no LMPD officer with the last name Fleming. [DE 13 at 150, n.1].

Count 1–Violation of 42 U.S.C. § 1983, Plaintiff's Constitutional Right to Travel Locally Though Public Spaces and Roadways (against the Mayor, Chief of Police, and Defendant Officers), Count 2–Violation of 42 U.S.C. § 1983, Monell Municipal Liability Theory-Violation of Plaintiff's Protected Constitutional Right to Travel Locally Through Public Spaces and Roadways (against Metro), Count 3–Violation of 42 U.S.C. § 1983, Monell Municipal Liability-Policy or Custom (against Metro), Count 4–Violation of 42 U.S.C. 1983-Unreasonable Use of Force (against Defendant Officers, individual capacity), Count 5–Violation of 42 U.S.C. 1983-Unlawful "Investigatory" Search (against Defendant Officers, individual capacity), Count 6–Violation of 42 U.S.C. § 1983 and Fourth Amendment-False Arrest Claim (against Defendant Officers), Count 7–Violation of 42 U.S.C. 1983-Monell Liability-Failure to Train (against Metro), Count 8–Kentucky False Imprisonment Claim (against Defendant Officers), Count 9–Kentucky Excessive Force (against Defendant Officers), Count 10–Kentucky Intentional Infliction of Emotional Distress (against Defendant Officers), Count 11–Kentucky Negligent Supervision, Training and/or Retention (against Chief of Police), and Count 12–Negligence and/or Gross Negligence (against Defendant Officers and Chief of Police). [DE 1-2].  Sanders's complaint alleges that during the relevant time Metro and the Chief of Police knowingly allowed LMPD officers "to ignore its own policies against biased law enforcement practices, in an unlawful effort to govern African-Americans in predominantly black areas" and cites findings from a United States Department of Justice investigation of Metro's and LMPD's policing practices that was released on March 8, 2023 ("DOJ Report"). [DE 1-2 at 23-24].

Defendants removed this matter from Jefferson Circuit Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331. [DE 1-1 at 1]. Defendants also state that removal is proper as this Court has original jurisdiction because Jefferson Circuit Court is located with the Western District

of Kentucky. [*Id.*]. And lastly, written notice of removal was properly served upon Sanders and filed with Jefferson Circuit Court. [*Id.*]. The Court finds that this case was properly removed and that this Court has jurisdiction to adjudicate the matter.

Defendants Metro, the Mayor, and the Chief of Police, move to dismiss Sanders's claims against them. [DE 7, DE 8, DE 13].   The individual officer Defendants filed an answer [DE 15] and have not moved to dismiss the claims against them. Sanders responded to the motions [DE 9, DE 10, DE 18, DE 20] and the moving Defendants replied. [DE 11, DE 12, DE 19].

## II.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits*, 552 F.3d at 434 (citation omitted). "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 Fed. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

III.    Discussion

A.  Counts 2, 3, and 7 Against Metro for *Monell* Liability

In Counts 2, 3, and 7, Sanders alleges constitutional violations against Metro based on its municipal liability.  Metro argues that all three of these claims fail to plausibly allege municipal liability. [DE 7-1 at 71].

i.  Standard

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom.  *Id.*  To state a § 1983 claim based on a municipal policy or custom, plaintiffs must "identify the policy, connect the policy to [Metro] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).  A plaintiff generally has four ways to demonstrate an unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  "Even after showing an unlawful policy or custom, a plaintiff must also demonstrate a direct causal link

between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 597 (W.D. Ky. 2020) (quoting *Spears*, 589 F.3d 249 at 256) (cleaned up). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)). At the motion to dismiss stage, it is sufficient for a plaintiff to plausibly allege an unlawful policy or custom and a direct causal link to the harm. *Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020).

### ii. *Analysis*

In support of municipal liability under Counts 2, 3 and 7 of his Complaint, Sanders alleges Metro violated his constitutional right through its "policy, procedure, custom, or practice by which the police officers of the LMPD order all persons to immediately leave the sidewalks and street located in front of 1809 Standard Avenue . . . the 'Standard Avenue Sweep'. . . " [DE 1-2 at 27]. Sanders further alleges "the Standard Avenue Sweep incites violence amongst its employee LMPD police officers . . . with persons . . . who are lawfully standing on a public sidewalk . . ." [*Id*.] He further alleges Metro carried out "a custom and/or well-established practice of preventing persons . . . from standing and/or walking the public sidewalks or street of Standard Avenue prior to and on or after Tuesday, May 28, 2024." [*Id*.] Sanders alleges Metro has failed to investigate unreasonable use of force and complaints of same and has ratified this conduct. [*Id*. at 33].

7

### 1.   Illegal Policy or Legislative Enactment

It is undisputed that Sanders does not allege the existence of an illegal official policy or legislative enactment, which is the first way a policy or custom can be demonstrated. *Spears*, 589 F.3d at 256.

### 2.   Ratification of Illegal Actions

The second way to demonstrate policy or custom is by allegations that an official with final decision-making authority ratified illegal actions. *Id*.   And while Metro is correct that single incidents like the one alleged here generally cannot constitute a municipal policy or custom,[4] "[a] single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). But "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification. Otherwise, "[a municipality] would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from respondeat superior liability." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Thus, ratification "requires affirmative approval of a particular decision made by a subordinate." *Id*.

Here, Sanders alleges that the Chief of Police, "the final policy maker, ratified constitutionally impermissible decisions and/or actions of Defendant Officers . . ." for the single incident alleged in the Complaint. [DE 1-2 at 32]. He also alleges that the Mayor ordered the Chief of Police to send LMPD officers to Standard Avenue to clean up the areas and have individuals

---

[4] A single incident generally is not *enough* to show a custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

that are seen outside removed for trespassing. [DE 1-2 at 16]. These allegations are conclusory and fail to plausibly allege affirmative approval of a policy of unconstitutional conduct to plausibly allege a ratification theory for an official custom or policy supporting municipal liability. Further, even if Sanders had plausibly pled that Metro subsequently ratified the decisions of the officers, he also fails to plausibly allege that the ratification was a "moving force" in causing the constitutional violation. *Williams v. Ellington*, 936 F.2d 881 (6th Cir.1991).  Thus, Sanders fails to plausibly allege municipal liability against Metro under a theory of ratification.

### 3.   Inadequate Training or Supervision

The third way to allege municipal liability is the existence of a policy of inadequate training or supervision.  Sanders alleges this theory in Count 7 of his Complaint. [DE 1-2 at 41]. To state a § 1983 claim based on a municipality's failure-to-train or failure-to-supervise, the plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  As to the municipality's "deliberate indifference," the plaintiff must either allege: (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). Thus, Sanders must plausibly allege that Metro's training program was inadequate, that the program's inadequacy resulted from Metro's deliberate indifference, and that the

9

inadequacy either caused or was closely related to Sanders's injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019).

Sanders alleges LMPD's officers "were not adequately trained and/or supervised in the areas of impermissible prohibition to the individuals Constitution protected right to travel locally through public spaces and roadways" and "in the areas of impermissible investigatory search tactics, and unreasonable use of force." [DE 1-2 at 41]. The Complaint says more, but its allegations amount to "[c]onclusory allegations or legal conclusions masquerading as factual allegations [which] will not suffice." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014) (citation omitted). It also alleges that Metro was "on notice of this need to train and/or supervise, and through its policymaker, made a deliberate choice not to provide proper and/or additional training/supervision" to the Defendant Officers and that the "need for more and/or different training has been so obvious" Metro's lack of inadequate training amounts to "deliberate indifference." [DE 1-2 at 42-43]. These assertions are insufficient to survive the motion to dismiss. *See Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493 (W.D. Ky. 2021) (quoting *Phillips v. PTS of Am., LLC*, No. 3:17-cv-603, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017)) (dismissing failure-to-train claim where complaint "'contain[ed] no factual content' indicating 'what these polices or customs regarding training and supervision were, why they were inadequate, and how they contributed to the [alleged] violation of [the plaintiff's] constitutional rights.'").

Even coupled with the factual allegations about the incident at Standard Avenue and the news articles and reports suggesting a history of unconstitutional conduct within LMPD, the complaint does not allege facts demonstrating "a complete failure to train the [officers], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Carter v. Louisville Metro. Police*

10

*Dep't*, No. 3:22-CV-00673-RGJ, 2023 WL 5986137, at *8 (W.D. Ky. Sept. 14, 2023) (quoting

*Harvey v. Campbell Cty., Tenn.,* 453 F. App'x 557, 567 (6th Cir. 2011) (citation omitted)).  First,

Sanders's allegation that Metro acted with deliberate indifference is a "bare assertion of [a] legal

conclusion[.]" *Tackett*, 561 F.3 at 488.  The Complaint does not allege facts which would allow

the Court to plausibly infer that "the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the

city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio

v. Harris*, 489 U.S. 378, 390 (1989); *see also Ransom v. Louisville-Jefferson Cnty. Metro. Gov't*,

No. 3:19-CV-631-RGJ, 2020 WL 5944283, at *6 (W.D. Ky. Oct. 7, 2020) ("In essence, Plaintiff

asks the Court to infer that Louisville Metro was 'deliberately indifferent' in training Defendant

Officers because [of the officers' conduct].")  Second, even if the Complaint did sufficiently allege

deliberate indifference, it does not allege that Metro "created a training regimen so deficient that

it was the actual cause of Defendant Officers' unconstitutional conduct."  *Ransom*, 2020 WL

5944286, at *6 (emphasis in original) (quoting *Harvey*, 453 F. App'x at 567).  In short, the

Complaint contains no factual allegations revealing what the training policies were, why they were

inadequate, or how Metro was deliberately indifferent. Thus, Sanders fails to plausibly allege

municipal liability under a theory of inadequate training or supervision.

### 4.  Custom of Tolerance or Acquiescence

The final way to demonstrate municipal liability is by the existence of a custom of tolerance

or acquiescence violations of federal rights. Under this theory, Sanders must plausibly allege (1)

the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice

on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct,

such that their deliberate indifference in their failure to act can be said to amount to an official

policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Metro asserts that the Complaint alleges a single event that "refers to the investigation into trespassing in this area which occurred on May 28 as a 'policy' and 'unlawful custom,'" but that "this is just a legal conclusion couched as a factual allegation," that does not have to be accepted as true. [DE 7 at 75]. Sanders counters that the allegations of the Standard Avenue sweep are sufficient to demonstrate a policy or unlawful custom that was ratified by Metro's officials and tolerance of excessive force and racial discrimination as evidenced by the DOJ Report. [DE 9]. In further support, Sanders cites *Doe v. Claiborne Cnty,* 103 F.3d at 507 for the proposition that "a custom sufficient to establish municipal liability under § 1983 exists where 'practices of [local] officials [are] so permanent and well settled as to constitute a custom or usage with the force of law.'" [DE 9 at 105].

Sanders alleges the Mayor ordered the Chief of Police to send LMPD officers to clear the area around Standard Avenue for a public event and that this violated his right to travel locally through public spaces and roadways, resulted in impermissible investigatory search tactics, excessive force, and unlawful arrest. [DE 1-2 at 16, 31-32]. This event took place on or about May 28, 2024. [*Id.*] As noted above, a single incident of unconstitutional activity generally cannot demonstrate custom. *Tuttle*, 471 U.S. at 823-24.  The allegations of this single event do not plausibly allege a clear and persistent pattern of illegal activity or a permanent and well settled practice.  Sanders's Complaint makes conclusory allegations that "the Standard Avenue Sweep" showed deliberate indifference to the improper training, supervision, and discipline of LMPD officers through the Metro's customs, policies, and practices and that Metro ratified these actions.

[DE 1-2]. But Sanders does not allege facts as to what those policies or customs entailed, and the "bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor does the citation to the DOJ Report rectify Sander's failure to connect the alleged unconstitutional customs and policies to his specific constitutional injuries. In short, although Sanders describes the Standard Avenue Sweep as a "policy" or "custom" throughout his Complaint, he fails to allege sufficient facts plausibly demonstrating that Metro maintained a custom of tolerance or acquiescence to federal rights violations that deprived him of his constitutional rights for purposes of *Monell*.

As a result of Sanders's failure to plead sufficient facts to establish a plausible claim for relief for municipal liability, the Court grants Metro's motion to dismiss Counts 2, 3 and 7 of the Complaint.

## B.  Count 1 Against the Mayor-Individual Capacity Claim.

Sanders brings a single claim of violation of 1983 against the Mayor for violating his right to travel locally through public spaces and roadways. [DE 1-2]. The Mayor argues he cannot be liable individually under this claim as a matter of law because he was not directly responsible for the alleged constitutional deprivation and he did not authorize or approve such alleged constitutional deprivation. [DE 8 at 91].  The Mayor argues that Sanders alleges no personal involvement or direct responsibility by him for the citations Sanders received on May 28, 2024. [*Id.*]  Sanders responds that he has adequately pled fact that the Mayor "personally directed the unconstitutional conduct." [DE 10 at 130].

"Liability under § 1983 must be based on active unconstitutional behavior," and neither a supervisory role nor "the right to control employees" can be the basis. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).  In other words, it is not enough for Sanders "to identify a constitutional

13

violation by some [Metro] official who ultimately was answerable to [the Mayor]." *Flagg v. City of Detroit*, 827 F. Supp. 2d 765, 793 (E.D. Mich. 2011), aff'd, 715 F.3d 165 (6th Cir. 2013). The Mayor is "only subject to liability under § 1983 if [Sanders] allege[s] that the Mayor was personally involved in the deprivation of his rights." *Hanner v. City of Dearborn Heights*, 450 F. App'x 440, 446 (6th Cir. 2011) (citing *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206–07 (6th Cir. 1998)). In other words, Sanders must allege that the Mayor "himself took action" by encouraging the action, some way directly participating in it, or at a minimum "implicitly authoriz[ing], approv[ing], or knowingly acquiesced in the unconstitutional conduct." *Flagg,* 827 F. Supp. 2d at 793.

Here, Sanders does not dispute that he fails to plead that the Mayor was present during the events at issue and acknowledges that mere supervisory authority is not enough to plead a claim under § 1983 against the Mayor individually. [DE 10 at 159]. Sanders has pleaded that the Mayor ordered the Standard Avenue Sweep, a procedure by which the police officers of the LMPD order all persons to immediately leave the sidewalks and street located in front of 1809 Standard Avenue . . ." and further alleges "the Standard Avenue Sweep incites violence amongst its employee LMPD police officers . . . with persons . . . who are lawfully standing on a public sidewalk . . ." [DE 1-2 at 27]. But even taking the allegations in a light most favorable to Sanders, he does not plausibly allege that Mayor implicitly authorized, approved, or knowingly acquiesced to the alleged unconstitutional conduct, which is the unlawful impeding of Sanders's constitutional right to travel through public spaces. In other words, Sanders does not plausibly allege that the Mayor implicitly authorized, approved, or knowingly consented to the LMPD offers violating his constitutional rights by stopping him from lawfully traveling through public spaces. Because Sanders fails to

14

plausibly allege that the Mayor was personally involved in the deprivation of his constitutional rights under § 1983, the claim against the Mayor in his individual capacity will be dismissed.[5]

### C. Counts 1, 11, and 12 Against the Chief of Police

The Chief of Police argues that the claims against her fail to be pleaded with sufficient factual allegations to plausibly state claims against her under Fed. R. Civ. P. 12(b)(6). [DE 13-1].

#### i. *1983 Violation of Right to Travel Public Road*

As with the Mayor, Sanders brings a single claim of violation of 1983 against the Chief of Police individually for violating his right to travel in public spaces. [DE 1-2]. The Chief of Police argues Sanders's allegations are conclusory and she cannot be liable individually under this claim as a matter of law because Sanders does not allege she was directly or personally responsible for the alleged constitutional deprivation. [DE 13 at 158].  Sanders responds that he has adequately pled fact that the Chief of Police is subject to supervisor liability under Count 1 because she ordered the Standard Avenue Sweep at the Mayor's directive and had at least constructive knowledge of LMPD's propensity for unconstitutional conduct.  [DE 18 at 193].

Supervisory liability under § 1983 may occur where there is "a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). To state a claim of supervisory liability under § 1983, a plaintiff must plausibly allege that a defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . of his subordinate through the execution of his job functions." *Does*

---

[5] An official capacity claim against the Mayor is a claim against Metro, and the claims against Metro have been dismissed for the reasons discussed. It is well-established that "[s]uits against municipal employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Scott v. Louisville/Jefferson County Metro Government*, 503 F. Supp. 3d 532, 541 (W.D. Ky. Nov. 25, 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); see also *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)) (holding state officials sued in official capacity were "cloaked with the same immunity as the government agency he/she represents").

*v. Whitmer,* 69 F.4th 300, 306 (6th Cir. 2023) (quoting *Peatross*, 818 F.3d at 242). Although a supervisor must have engaged in "some active unconstitutional behavior," that behavior does not have to be "active in the sense that the supervisor must have physically put [her] hands on the injured party or even physically been present at the constitutional violation." *Peatross*, 818 F.3d at 241–42 (citation modified). Nonetheless, Sanders must allege "more than an attenuated connection between the injury and the supervisor's wrongful conduct." *Whitmer*, 69 F.4th at 307 (quoting Peatross, 818 F.3d at 241). "Sloppiness, recklessness, or negligence is insufficient to establish [supervisory] liability." *Id.* (citing *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020)). However, "deliberate indifference, knowing acquiescence, tacit or implicit authorization, or failure to take precautions against likely violation may suffice." *Id.* (citations omitted).

Here, Sanders alleges that the Chief of Police, at the Mayor's directive, "ordered the LMPD officers under her command to . . . go to the said area and order all persons to immediately leave the sidewalks and street located in front of 1809 Standard Avenue and the eastbound public sidewalk adjacent to the street named Standard Avenue." [DE 1-2 at 16]. Sanders alleges that the Chief of Police acted with deliberate indifference to Sanders's constitutionally "protected right . . . by failure to properly train, instruct, and supervise the Defendant Officers . . . " [DE 1-2 at 22] and that "it was obviously foreseeable that the failure of the [Chief of Police] . . . to properly train, instruct, and supervise the LMPD officers . . . would likely result in the deprivation of constitutional rights prohibiting such action." [DE 1-2 at 22-23]. But even taking the allegations in a light most favorable to Sanders, he alleges no facts plausibly indicating that the Chief of Police implicitly authorized, approved, or knowingly acquiesced to the alleged unconstitutional conduct to violate Sanders's right to travel through public spaces. *Whitmer,* 69 F.4th at 307 (finding that

16

plaintiff's allegations supervisors knew that their subordinates were violating the plaintiffs' constitutional rights, but failed to intervene, and that this failure encouraged and implicitly authorized the alleged constitutional violations, insufficient for supervisory liability). In short, the minimal and conclusory facts in the Complaint in relation to the Chief of Police are insufficient to support a plausible claim of supervisory liability under § 1983. Thus, the claim against the Mayor in his individual capacity will be dismissed.

### ii.   *Negligent Supervision under Kentucky Law*

The Chief of Police argues that Sanders's claim against her for negligent supervision under Kentucky law is too conclusory to survive scrutiny under Fed. R. Civ. P. 12(b)(6) and fails to allege any specific actions by the Chief of Police in relation to LMPD's training, her supervision of employees, or her retention of employees. [DE 13 at 154-55]. Sanders counters that the Chief of Police should have known of the unfitness of the officers because of the DOJ Report. [DE 18 at 184].

To state a claim for negligent supervision under Kentucky law, the plaintiff must plausibly allege that (1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the hiring, supervision and/or retention of the employee proximately caused the injury. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (quoting 27 Am.Jur.2d Employment Relationship § 401 (2004)) ("Under the theory of negligent hiring/retention, the employer's liability may only be predicated upon its own negligence in failing to exercise reasonable care in the selection or retention of its employees."). Sanders alleges only generally that the Chief of Police was responsible for "training and/or supervising the officers of the City's LMPD officers," that she had a "duty to exercise reasonable care in the hiring, retention and supervision of [officers]," and that she breached her duty. [DN 1-

17

2, at 45-46]. Beyond these conclusory assertions, Sanders offers no additional factual allegations that could show the Chief of Police had any knowledge or reason to know that Officer Defendants presented a risk. Sanders cannot survive a motion to dismiss on such conclusory allegations; he must allege facts that raise a reasonable inference that the Chief of Police is liable for negligent supervision. Nor does the citation in the Complaint to the DOJ Report rectify Sander's failure to plausibly allege facts the Chief of Police knew the LMPD officers involved in the incident created a risk. Thus, the claim against the Chief of Police for negligent supervision will be dismissed.

### iii.    Negligence and Gross Negligence under Kentucky Law

The Chief of Police similarly argues that Sanders's negligence and gross negligence claims are conclusory and devoid of the factual development required to plausibly state a claim. [DE 13 at 155].  Sanders's responds that he has alleged the Chief of Police is the final policy maker for LMPD, owed a duty to the public to hire and train officers, and that the actions of the officers were foreseeable given the LMPD history of using excessive force. [DE 18 at 188].

To plead negligence under Kentucky law, the plaintiff must make the following allegations that the defendant: (1) owed the plaintiff a duty of care; (2) the defendant breached the standard of care by which his or her duty is measured; and (3) that the breach was the legal causation of the consequent injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003); *Wright v. House of Imports, Inc*., 381 S.W.3d 209, 213 (Ky. 2012).  Gross negligence under Kentucky law is a wanton or reckless disregard for the safety of other persons. *Kinney v. Butcher*, 131 S.W.3d 357, 358–59 (Ky. App. 2004).  Here, as with negligent supervision, Sanders alleges the elements of negligence and gross negligence against the Chief of Police, stating in his complaint that she had a duty to "follow the proper law enforcement policies, procedures, and techniques" and breached her duty by "failing to follow standard law enforcement procedures." [DE 1-2 at 46]. He

18

also alleges that the Chief of Police's breach of duty was "so egregious that it rises to the level of gross negligence" without pleading with specificity how she breached her duty. Plaintiff fails to plead this claim with the requisite specificity for the Court to infer plausible claims. Even taking Sanders's allegations as true and in a light most favorable to him, he does not plausibly allege how the Chief of Police breached the standard of care. These "bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, the claim against the Chief of Police for negligence and gross negligence will be dismissed.

## IV.    Conclusion

For the reasons stated above, the Court **ORDERS** as follows:

1.  The moving Defendants' motions to dismiss for failure to state a claim [DE 7, DE 8, DE 13] are **GRANTED**.

2.  Counts 2, 3, and 7 of Sanders's Complaint [DE 1-2] against Defendant Louisville/Jefferson Country Metro Government are **DISMISSED**.

3.  Count 1 of Sanders's Complaint [DE 1-2] as asserted against Mayor Craig Greenberg and Chief of Police Jacquelyn Gwinn-Villaroel is **DISMISSED**.

4.  Counts 11 and 12 of Sanders's Complaint [DE 1-2] against Chief of Police Jacquelyn Gwinn-Villaroel are **DISMISSED**.

5.  Counts 1, 4, 5, 6, 8, 9, and 10 against the Officer Defendants remain.

6.  This matter will be referred to the Magistrate Judge for a Rule 16 conference.

March 31, 2026

Rebecca Grady Jennings, District Judge
United States District Court

19